WARDLAW, Circuit Judge,
concurring in part and dissenting in part:
I agree with the conclusions of the district court and majority that the Mutual Strike Assistance Agreement (“MSAA”) lies outside the nonstatutory labor exemption, and agree with the district court’s conclusion that the MSAA, the arrangement in question, is not a per se violation of section 1 of the Sherman Act. I would also affirm the district court’s denial of the State of California’s summary judgment motion because California failed to provide sufficient evidence of the arrangement’s anticompetitive effects as a whole and in context to meet its burden on summary judgment. As for the procompetitive effects or the possibility that there is no impact on the market as a result of the novel arrangement at issue, there exist genuine issues of material fact that preclude summary judgment. The majority relies on California Dental Ass’n v. Federal Trade Comm’n, 526 U.S. 756, 119 S.Ct. 1604, 143 L.Ed.2d 935 (1999), to devise a new standard of “per se-plus or quick look-minus” antitrust review that it believes is required to review the arrangement here. As it must: as the State of California itself points out, no case has ever held that revenue-sharing associated with a multiemployer labor negotiation operates as a restraint of trade in violation of the Sherman Act. If the MSAA were a pure profit-sharing arrangement across the entire market, there would be no need for a new standard, because the per se rule would apply. Cf. Citizen Publishing Co. v. United States, 394 U.S. 131, 135, 89 S.Ct. 927, 22 L.Ed.2d 148 (1969) (“Pooling of profits pursuant to an inflexible ratio ... runs afoul of the Sherman Act.”).
Here, seven local unions affiliated with the United Food and Commercial Workers (“UFCW”), of which six operated as a multi-union bargaining unit, agreed that grocery chains Ralph’s, Vons, and Albert-son’s[1] could operate as a multiemployer bargaining unit for renegotiation of the collective bargaining agreement set to expire shortly. By entering into the MSAA, *1203 the grocery chains sought to deter the unions from bringing economic pressure to bear on one single employer with the intent of forcing that employer to exert pressure on the others to settle on unfavorable terms. The MSAA thus established an understanding that “a strike against one Employer will amount to a strike against all Employers.” The arrangement set forth certain mutual obligations, including that if one employer was struck, each other signatory would lock out all union employees within forty-eight hours, and that a revenue-sharing provision would be triggered in the event of a strike. Under the revenue-sharing provision, the grocery chains agreed to reimburse those that lost revenue due to a strike in an amount that would maintain their relative revenues pre- and post-strike. It is undisputed that during the labor negotiations other competition existed in the relevant market, and that the MSAA would expire two weeks after the labor negotiations ended.
Because the State of California relied upon its position that the MSAA violated the Sherman Act under the “per se” and quick look standards, the record is bereft of market analyses or an explanation of the actual anticompetitive effects of the MSAA. Although I share the majority’s skepticism about the legitimacy of the grocery chains’ contention that lowering labor costs by revenue-sharing to diminish any “whipsaw” tactics by the union would ultimately benefit customers in the form of lower prices,[2] the evidence of the actual anticompetitive effects of the agreement is, at best, in dispute.
As Justice Souter wrote in California Dental,
The object is to see whether the experience of the market has been so clear, or necessarily will be, that a confident conclusion about the principal tendency of a restriction will follow from a quick (or at least quicker) look, in place of a more sedulous one. And of course what we see may vary over time, if rule-of-reason analyses in case after case reach identical conclusions.
California Dental, 526 U.S. at 781, 119 S.Ct. 1604. I agree with the district court that a “quick look” standard of review was thus inappropriate, in part because no case has addressed whether “a great likelihood of anticompetitive effects can be easily ascertained,” id. at 770, 119 S.Ct. 1604, in agreements such as this. I do not agree that whether the MSAA violates the Sherman Act is intuitively obvious; a more extended examination of the evidence is warranted. On this record, I am unable to reach a “confident conclusion that the principal tendency,” id. at 781, 119 S.Ct. 1604, of the arrangement at issue is to restrict competition so as to have an anticompetitive effect on customers and markets. Therefore I must dissent from the majority’s holding on that question.

. The fourth party to the MSAA, Food4Less, a subsidiary of Ralph's, had a separate contract with UFCW, expiring four months later.

. The use of a revenue-sharing agreement in the context of multiemployer bargaining may in fact have a pro-competitive impact, but whether it is ethical and/or a practice that our country's labor laws should permit strikes me as a question best left to policymakers, not courts.